STATES DISTRICT COURT WESTERN
DISTRICT OF NEW YORK

_____

DEAN VINCENT D.,[1]

                    Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

**DECISION AND ORDER**

1:23-cv-00982 (JJM)

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance ("DIB") or supplemental security income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [10, 12].[2] The parties have consented to my jurisdiction [13]. Having reviewed the parties' submissions [10, 12], the Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

The parties' familiarity with the 841-page administrative record [5] is presumed. The plaintiff filed applications for DIB and SSI on November 12, 2020. Id. at 11. He alleged a disability beginning on June 4, 2018. Id. Plaintiff's claim was initially denied. Id. Administrative Law Judge ("ALJ") Dina Loewy conducted a telephonic hearing on January 6, 2022. Id.; *see also* id. at 63-104 (transcript of hearing). Plaintiff and his attorney appeared. Id.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

at 63.  At the hearing, plaintiff amended his alleged onset date to March 31, 2021.  Id.; *see also*

id. at 75-76.  ALJ Loewy heard testimony from the plaintiff and a vocational expert.  Id. at 74-

102.

### A.   The ALJ's Notice of Decision

ALJ Loewy concluded that plaintiff was not disabled from March 31, 2021

through May 16, 2022, the date of her decision.  Id. at 22-23.  She determined that plaintiff's

severe impairments were "degenerative disc disease, left knee osteoarthritis, follicular

lymphoma, and obesity".  Id. at 14.  She determined that plaintiff retained the residual functional

capacity ("RFC") to perform light work with several additional limitations:

> "[H]e can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk with normal breaks for [a] total for both of 6 hours in an 8-hour workday, and he can sit with normal breaks for six hours in an eight-hour workday.  He can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds.  He can occasionally perform balancing and stooping, and can never perform [ ] kneeling, crouching, crawling or operating foot controls."

Id. at 16.

### B.   Plaintiff's Testimony

Plaintiff testified that he last worked in June of 2018, when he sustained a back

injury at work.  Id. at 78, 80.  He attends his doctor's appointments, makes meals, takes public

transportation to his mother's house 30 miles away, and attends physical therapy and chiropractic

appointments.  Id. at 78-79.  He testified that the pain level in his low back, left hip, and left leg

is "around a seven most of the time".  Id. at 79, 82.  Chiropractic treatments alleviated his pain

for about three days.  Id. at 83.  He can walk for "maybe 20 minutes" and stand for "about a half

hour or 45 minutes". Id. at 88. He can sit "[o]n and off about a half hour or 45 minutes" and can

lift or carry 15 pounds. Id.

To treat his lymphoma, he received weekly Rituxan infusions in November 2022.

Id. at 91, 783. His treatment plan is observation of his condition for three months, followed by

additional infusions. Id. at 91, 787.

**C.     ALJ Loewy's Analysis of the Opinion and Other Evidence**

To arrive at her conclusions of plaintiff's RFC, ALJ Loewy analyzed the evidence

in the record, including plaintiff's testimony, and the medical and opinion evidence. Id. at 17-21.

After summarizing plaintiff's testimony, she found that plaintiff's "statements about the

intensity, persistence, and limiting effects of [his] symptoms . . . are inconsistent because his

testimony, as well as reports throughout the record, indicate a higher level of functioning than

alleged." Id. at 17. ALJ Loewy then summarized the medical evidence. Id. at 18.

ALJ Loewy considered functional assessments from several sources: Frank Luzi,

M.D; David Bagnall, M.D.; Hongbiao Liu, M.D.; and Jennifer Gula, OTR.

ALJ Loewy found the return-to-work statements of plaintiff's treating physician,

Dr. Bagnall "not persuasive". Id. at 19-20. Dr. Bagnall's treatment notes include statements

concerning plaintiff's ability to return to work. *See, e.g.* id. at 384, 380, 394, 387. For example,

in his October 10, 2018 treatment note, Dr. Bagnall released plaintiff to "light to medium

demand" work, with "no lifting greater than 30 pounds" and "no repetitive bending, lifting or

twisting". ALJ Loewy explained her treatment of Dr. Bagnall's opinions:

> "These opinions are not persuasive, because while they consider
> the claimant's subjective complaints, they do not adequately
> consider his self-reported retained physical capacity for tasks such
> as activities of daily living. Further, these vague opinions were
> rendered almost 3 years prior to the amended onset date".

Id. at 20.

Dr. Luzi performed an independent medical examination of plaintiff on August 15, 2018 in the context of plaintiff's workers' compensation claim. Id. at 525. He described plaintiff's degree of disability as "[m]ild to moderate, partial" and stated with respect to plaintiff's ability to return to work:

> "I feel he could return to work with restrictions. He should avoid repetitive bending or twisting of the waist. He should not lift or carry objects weighing greater than 25 pounds. He should not sit, stand or walk for prolonged periods of time. He should not crawl, kneel, squat or climb with any frequency. . . . He would be able to perform overhead activities with his upper extremities".

Id. at 526-27. ALJ Loewy found Dr. Luzi's opinion "not persuasive" because it was "vague", and "rendered shortly after his work injury and almost 3 years prior to the amended onset date". Id. at 20.

Occupational Therapist Gula evaluated plaintiff's functional capacity in September 2019. She found, *inter alia*, that plaintiff could "occasionally" (*i.e.* 6-33% of the workday) lift up to 25 pounds, and "frequently" (*i.e.* 34-66% of the workday) lift and carry 15 pounds. Id. at 412. She also opined that plaintiff could "frequently" stand and sit in a static position, but should "change position as needed", and "continuously" (*i.e.* 67-100% of the workday) walk, "intermixed with other activity." Id. at 413. She also assessed limitations on plaintiff's ability to climb stairs ("frequent") and ladders ("occasional"). Id.

ALJ Loewy found OT Gula's evaluation "somewhat persuasive, as it is consistent with her physical findings". However, ALJ Loewy noted that it "was rendered 18 months prior to the amended onset date". Id.

- 4 -

Dr. Liu performed a consultative examination of plaintiff on February 6, 2021. Upon examination, plaintiff was able to squat only 40% of normal due to his low back pain. Dr. Liu also measured limitations in plaintiff's lumbar range of motion, and the straight leg raise was positive in both seated and supine positions. He concluded that the plaintiff has a "mild to moderate limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, prolonged sitting, and standing." Id. at 621. ALJ Loewy noted that plaintiff's reports to Dr. Liu of pain at 8/10 on the pain scale, being able to lift only five pounds, and needing to change position after 30 minutes of sitting or standing were inconsistent with his description of his physical activities. He could walk one mile, cook, clean, do laundry, shop, shower, bathe, dress, and enjoyed watching television, listening to the radio, and reading books. Id. at 18.

ALJ Loewy found the plaintiff's descriptions of his own activities critical to her analysis of Dr. Liu's opinion. She found Dr. Liu's opinion was "not persuasive" because it was "not entirely consistent with his objective examination findings, which included:

> "Dr. Liu noted that the claimant ambulated with a normal gait and stance. . . . He had no difficulty rising from the chair, changing for the examination, or getting onto or off the examining table. He walked on heels and toes with moderate difficulty, and he squatted 40% of the way down. Although Dr. Liu found that the claimant had reduced lumbar range of motion and positive straight leg raising, there was no lower extremity edema or strength, reflex, or sensory deficit, and range of motion was full bilaterally in the shoulders elbows forearms wrists hips knees and ankles. In addition, the claimant reported the retained physical capacity to walk 1 mile, cook, clean the house and do laundry. Further, since it is vague and is not expressed in quantitative terms of functional limitations, the undersigned is unable to determine to what extent the evidence supports it."

Id. at 20.

Finally, although ALJ Loewy found "not persuasive" one of the state agency medical consultant opinions in the record, she found state agency consultant Dr. Ehlert's opinion "partially persuasive".  Id. at 20.  Dr. Ehlert reviewed the evidence in the record on May 11, 2021.  Id. at 145.  He found that plaintiff could perform light work; could stand, walk, or sit for 6 hours of an 8-hour workday; and assessed limitations for climbing ladders, stooping, and crawling.  Id. at 143-44.  ALJ Loewy explained that Dr. Ehlert's opinion:

> "is partially supported by the evidence as a whole, and it generally considers the claimant's subjective complaints and self-reported retained physical capacity for tasks such as activities of daily living despite his severe impairments.  However, these consultants were not able to examine the records that came in after their review, and the record supports a more limiting residual functional capacity assessment."

Id. at 20-21.

## ANALYSIS

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).   "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v.

Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*"(emphasis in original)).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination").

It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record." Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable"). "Ultimately it is [p]laintiff's burden to prove a more

restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).

Plaintiff argues that ALJ Loewy erred in two ways:

1. Failing to consider whether plaintiff's lymphoma infusions would result in absenteeism in excess of what employers would tolerate; and

2. Failing to include in her RFC a sit/stand option based upon the medical opinions in the file.

Plaintiff's Memorandum [10-1] at 16-28.

In response, the Commissioner argues that the RFC was supported by substantial evidence, that ALJ Loewy properly analyzed the evidence, and that plaintiff failed to meet her burden to demonstrate that a more restrictive RFC was necessary.  Commissioner's Brief [12-1] at 7-16.

## B.      Did ALJ Loewy Properly Consider Plaintiff's Expected Infusion Treatments?

Plaintiff argues that ALJ Loewy erred when she "did not assess whether Plaintiff's need for chemotherapy infusions would result in absenteeism when formulating [her] RFC".  [10-1] at 19.  Plaintiff testified that he received four infusions in November: one each Wednesday of the month.  [5] at 91.  He had a follow up appointment scheduled in three months, and expected to receive more infusions after that.  Id.  Plaintiff's medical records corroborate his testimony.  His January 5, 2022 treatment note from his cancer treatment provider states, "[p]atient has responded extremely well with Rituxan therapy with resolution of b-symptoms. Discussed with patient, will start maintenance Rituxan every 2 months for a total of 4 cycles". Id. at 787.

The vocational expert testified that "being off task anything more than 10% of the workday or having more than one unscheduled absence per month" was the maximum tolerance

an employer would have for absences and time off task.  Id. at 101.  "[E]ither of those sort of patterns of behavior would, I believe, result in someone not being able to maintain employment".  Id. at 102.

Plaintiff argues that "in light of the VE's testimony that a pattern of missing more than one day of work a month would render a [worker] unable to maintain employment, the ALJ's failure to assess the impact of Plaintiff's need for regular chemotherapy infusions constituted harmful error, prejudicial to Plaintiff."  [10-1] at 20.  I agree with plaintiff that "[a]bsenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded."  Id. at 19, *citing* Bellinger v. Commissioner, 2018 WL 676092, *2 (D. Conn. 2018).  This case, however, presents different facts than those considered in Bellinger.

In Bellinger, the plaintiff developed anemia following a gastric bypass surgery. To treat this condition, plaintiff required weekly infusions lasting 2-3 hours each, for 10 weeks, followed by a one-month break.  Id.  The record demonstrated that plaintiff had received these infusions for more than a year.  Id. at *3.  In his decision, however, the ALJ's decision did not demonstrate "that he recognized the need to account for the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)" as required by Social Security Ruling 96-8P.  Id.  Instead, the ALJ "focused only on her symptoms".  Id. The court determined that remand was necessary:

> "Without an explanation of how the ALJ considered the infusions
> (or any indication that he recognized the need to consider them at
> all), I cannot determine whether he properly applied the law or
> whether his conclusions were supported by substantial evidence."

Id.

Instead, the facts here are more akin to those in <u>Alysha C. v. Commissioner</u>, 2022 WL 464239, *6 (W.D.N.Y. 2022).  There, plaintiff argued that the ALJ erred for failing to consider that her need to attend regular physical therapy appointments would lead to excessive absences and render her unemployable.  <u>Id.</u> at *6.  The court disagreed.  The record there showed that plaintiff's physical therapy appointments lasted between twenty-five to forty minutes.  Plaintiff cited no evidence in the record that she would need to miss work for each appointment or that appointments could not be scheduled to avoid excessive absenteeism.  <u>Id.</u> The court also noted that the purpose of physical therapy was to rehabilitate and treat plaintiff, and that the frequency of physical therapy would decrease over time.  <u>Id.</u>

Here, plaintiff does not identify any evidence in the record that shows how long the infusions last.  Nor does he cite any evidence that the appointments could not be scheduled in a way that would not conflict with his work schedule, or that he would miss an entire day of work to attend the appointments.  These treatments are not likely to last for years or months at a time.  There are a finite number of treatments contemplated.  Even if some of the treatments had to be scheduled during the workday, any time away from work due to the infusions would not be an "unscheduled" absence.  The vocational expert testified that an employer would not tolerate "more than one <u>unscheduled</u> absence per month".  [5] at 101 (emphasis added).  "Accordingly, plaintiff has not demonstrated the ALJ committed error in considering Plaintiff's medical appointments".  <u>Jason R. v. Commissioner</u>, 2023 WL 1131265, *7 (W.D.N.Y. 2021); *see also* <u>Tiffany M. v. Commissioner</u>, 2021 WL 4260441, *6 (W.D.N.Y. 2021) ("[p]laintiff fails to cite any evidence that she would require more intensive treatment that would require greater absenteeism, or that such appointments would not be available outside working hours").

**C.      Did the ALJ Err by Not Including a Sit/Stand Option in the RFC?**

Plaintiff argues that his "testimony and the opinions of several medical sources support his inability to perform prolonged sitting or standing, strongly indicating the need for a sit/stand option and calling into question his ability to stand for the 6 out of 8 hours needed to perform light work". [10-1] at 24. He also argues that the ALJ's analysis was flawed because "she failed to evaluate the consistency of the medical opinions with one another regarding Plaintiff's limitations maintaining prolonged sitting or standing". Id. He points to the functional assessments of Dr. Bagnall, Dr. Luzi, and Ms. Gula, and to information included in the treatment notes of Gordon Steinagle, M.D. Dr. Bagnall opined that plaintiff should not engage in prolonged standing. [5] at 394. Dr. Luzi stated that plaintiff "should not sit, stand or walk for prolonged periods of time". Id. at 527. Occupational Therapist Gula's report indicates that plaintiff can sit and stand, each for up to 66% of a workday, but that he should change positions as needed. Id. at 413. Dr. Steinagle recorded plaintiff's statements that he could stand for 90 minutes (id. at 435) and walk up to 45 minutes (id. at 495). Plaintiff testified he could walk for "maybe 20 minutes" and could sit or stand for "about a half hour or 45 minutes" at a time. Id. at 88.

However, I agree with the Commissioner that ALJ Loewy considered the opinions and other evidence in sufficient detail to satisfy her obligation to "construct an accurate and logical bridge between [her] recitation of the facts and the conclusions [she] reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted); *see also* Commissioner's Brief [10-1] at 14-18. Although there is evidence in the record that could support different findings, "there is substantial evidence to support the

ALJ's decision.  The Commissioner, not the Court, is responsible for weighing conflicting

evidence." Pagan o/b/o Delgado v. Barnhart, 409 S.Supp.2d 217, 220 (W.D.N.Y. 2006).

Further, "[t]o the extent [plaintiff] faults the ALJ for failing to explicitly discuss

the consistency of each medical opinion with specific other opinions, an ALJ need not recite

every piece of evidence that contributed to the decision, so long as the record permits us to glean

the rational of an ALJ's decision". Villier o/b/o N.D.D.R. v. Commissioner, 2024 WL 2174236,

*3 (2d Cir. 2024) (Summary Order); see also David C. v. Commissioner, 2024 WL 376598, *4

(W.D.N.Y. 2024) (the ALJ "was not required to specifically assess the consistency between their

opinions as long as he considered their consistency with the record as a whole").

ALJ Loewy was required to "explain how [she] considered the supportability and

consistency factors" for each opinion.  20 C.F.R. §404.1520c(b)(2).  She did that here in

sufficient detail that I am able to "glean the rational of [her] decision". Villier o/b/o N.D.D.R,

2024 WL 2174236 at *3.  She found that Dr. Bagnall's opinions "considered" (i.e. are supported

by) the plaintiff's subjective complaints, but "do not adequately consider his self-reported

retained physical capacity for tasks such as activities of daily living" (i.e. they are not consistent

with evidence in the record documenting plaintiff's own descriptions of his activities).  [5] at 20.

In addition, she noted that Dr. Bagnall's opinions were of limited evidentiary value because they

were rendered nearly 3 years prior to the onset date.  Id.; see also Rotolo v. Commissioner, 2017

WL 6343673, *5 (N.D.N.Y. 2017) ("[p]laintiff is correct in his assertion that Drs. Baker and

Heap's opinions were of limited evidentiary value because they were rendered well before the

relevant time period").

ALJ Loewy identified similar limitations with Dr. Luzi's report.  She noted that

Dr. Luzi's opinion was stated in "vague" terms (i.e. did not clearly state specific limitations

supported by his findings) and also rendered nearly 3 years prior to the onset date (*i.e.* not consistent with plaintiff's later statements of his abilities closer in time to the onset date).  [5] at 20.

Finally, ALJ Loewy found OT Gula's evaluation "partially persuasive".  Id. She noted that the evaluation was "consistent with her physical findings" (*i.e.* supported by them), but was of limited evidentiary value because it was rendered 18 months prior to the amended onset date (*i.e.* was not necessarily consistent with plaintiff's reports of his abilities closer in time to the onset date).  Id.  Further, notwithstanding her "recommendations" that plaintiff "should change position as needed," Occupational Therapist Gula opined that plaintiff could sit and stand each for up to 66% of the workday.  Id. at 413.

Limitations that ALJ Loewy incorporated into the RFC were supported by the restrictions contained in the opinions of OT Gula and Dr. Ehlert.  To the extent that the RFC assessed limitations greater than those contained in their reports based on the plaintiff's subjective complaints and testimony, this was not an error.  "The fact that the ALJ afforded Plaintiff the benefit of the doubt and included additional limitations in her physical RFC finding is not grounds for remand."  Haggins v. Commissioner of Social Security, 2020 WL 4390698, *5 (W.D.N.Y. 2020).

The ALJ was sufficiently specific in her analysis that it is not possible to say here that "no reasonable fact finder could have reached the ALJ's conclusions based on the evidence in the record."  Cheatham, supra.  Accordingly, ALJ Loewy's findings concerning plaintiff's RFC were supported by substantial evidence.  She supported her RFC with specific citations to the record.  She neither mischaracterized nor cherry-picked the record to support her

conclusions.  She did not ignore evidence of more significant limitations.  Therefore, I find that

her conclusions concerning plaintiff's RFC are supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Commissioner's motion for judgment on the

pleadings [12] is granted, and the plaintiff's motion for judgment on the pleadings [10] is denied.

 **SO ORDERED**.

Dated: March 31, 2026

/s/     Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge